IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) ) | No. 10-20257 STA-dkv |
| MELVIN BEASLEY, | ) ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS

Defendant Melvin Beasley ("Beasley") is charged in a five-count superseding indictment (D.E. 32.) for possession with intent to distribute cocaine and crack cocaine on four different occasions in April 2010 in violation of 21 U.S.C. § 841(a)(1). On December 6, 2011, Beasley filed a motion to suppress all items seized from his residence, his truck, and a shed on the premises during a search on April 23, 2012.[1] (D.E. 43.) Beasley amended his motion on December 7, 2011. (D.E. 44.) Beasley contends that the search warrant lacked probable cause because the officers submitted a "bare bones" affidavit in support of the warrant and that the search was unreasonable because the warrant became stale before the officers had an opportunity to execute it. The government filed an opposing memorandum. (D.E. 45.) The motion was referred to the United States Magistrate Judge for a report and recommendation. On

---

1. These items relate only to Counts 4 and 5 of the indictment.

January 23, 2012, Beasley filed a reply to the government's response (D.E. 50) and a second amended motion to suppress (D.E. 51) in which he challenged the search of his shed and truck as lacking probable cause and requested an evidentiary hearing. The government filed a sur-reply and a response to the amended motion on February 7, 2012. (D.E. 57.) The government also requested an evidentiary hearing as to the new grounds.

The evidentiary hearing was held on March 13, 2012. At that hearing, the government called Task Force Officer Joseph Garrison Taylor of Tennessee's 25th Judicial District Task Force to testify.[2] Officer Taylor was the only witness to testify. The government also introduced two collective exhibits: (1) the search warrant authorizing the search of Beasley's premises (Ex. 1), Officer Taylor's affidavit in support of the search warrant, and the return of the search warrant; and (2) six photos of Beasley's premises (Ex. 2). After careful consideration of the statements of counsel, the testimony of the witnesses, the evidentiary exhibits, and the entire record in this case, this court submits the following findings of fact and conclusions of law and recommends that the motion to suppress be denied.

I. PROPOSED FINDINGS OF FACT

In April 2010, officers with Tennessee's 25th Judicial Drug Task Force received information from a confidential source that

---

2. The court found Officer Taylor to be a credible witness, and his testimony was uncontroverted.

Beasley was selling crack cocaine from his residence located at 190 Main Street, Lagrange, Tennessee. Officers then utilized the confidential source to make three controlled purchases from the defendant at his residence on April 8, 13, and 19, 2010. The confidential informant obtained 9.7, 22.9, and 11.9 grams of crack cocaine, respectively, from the defendant.

On April 20, 2010, Task Force Officer Garrison Taylor drafted and submitted an application for a search warrant and an accompanying affidavit in order to search the defendant's residence. In the affidavit, Officer Taylor noted that police officers and a confidential source provided information to the Task Force concerning the defendant's suspected drug trafficking. (Officer Taylor's Aff., Ex. 1.) While Officer Taylor stated that the confidential source was reliable, he did not provide specifics or explain the source's reliability. (*Id.*) Officer Taylor did note, however, that the confidential source was used during a controlled buy in which the confidential source wore an audio listening device and was provided controlled currency to purchase crack cocaine from the defendant.[3] (*Id.*) According to the affidavit, the confidential source went to the defendant's residence at 190 Main St. and exchanged the currency for 9 grams of a substance. (*Id.*) The affidavit further states that the

---

3. Although Officer Taylor testified that the confidential source participated in several controlled buys with the defendant, the affidavit only recounts one transaction.

confidential source met with Officer Taylor at a predetermined location near the defendant's residence after the controlled buy. (*Id.*) Officer Taylor testified in his affidavit that the confidential source turned over 9 grams of the substance, which later tested positive for crack cocaine. (*Id.*) The affidavit also states that the officers, as well as the confidential source, reported a large amount of "to and from" traffic from the residence. The affidavit concludes by detailing Officer Taylor's prior training and experience in narcotics trafficking and how this experience and training led him to believe that crack cocaine was being stored and sold at the defendant's residence.[4] (*Id.*)

Based on the affidavit, the Honorable Joseph Walker, Circuit Court Judge for the 25th District of Tennessee issued the search warrant, finding probable cause to believe that officers would find crack cocaine, paraphernalia, drug records, and firearms at the defendant's residence. The property to be searched was the same property described in Officer Taylor's affidavit: "[a] single story residence with white siding, black shudders[sic] and a faded gray roof . . . . positioned at 190 Main St. in Lagrange/Fayette County TN." (Search Warrant, Ex. 1; Officer Taylor's Aff., Ex. 1.) The search warrant also permitted officers to search all other buildings and vehicles found on the defendant's premises. (Search

---

4. According to the search warrant return, the officers also seized fifteen pills from a blue Honda Accord, but the government at the hearing stated that they were not going to introduce the pills as evidence. Therefore, the defendant did not seek to suppress the pills.

Warrant, Ex. 1.) Officer Taylor testified at the hearing that, although he had no supporting facts in his affidavit demonstrating that drugs were specifically stored in Beasley's shed and vehicle, his experience and expertise as a drug enforcement officer has taught him that drug dealers store drugs practically everywhere on their property.

Three days later, on April 23, 2010, Officer Taylor, accompanied by other law enforcement officers, executed the search warrant at the defendant's residence. The officers seized (1) approximately 70 grams of crack cocaine and 5.8 grams of powder cocaine from a white truck owned by the defendant and parked in a driveway on the premises; (2) sandwich bags, torn baggies with cocaine residue, a clear glass plate with cocaine residue, a digital scale with cocaine residue, and rubber gloves from a shed on the premises; and (3) approximately .06 grams of crack cocaine from a bedroom inside the defendant's residence. (Search Warrant Return, Ex. 1.)

At the hearing, Officer Taylor was also shown six photographs of Beasley's property that displayed the white truck, the shed, and Beasley's residence. While viewing the photographs, Officer Taylor testified that the shed was approximately twenty yards from Beasley's residence, was not locked or set off by any boundaries or fencing, and was close to Beasley's driveway. Office Taylor also

testified that Beasley's truck was sitting in the driveway, which was directly adjacent to Beasley's residence.

II. PROPOSED CONCLUSIONS OF LAW

Beasley seeks to suppress all items seized and evidence obtained as a result of the search warrant. The burden of proof in a motion to suppress is on the defendant. *Rakas v. Illinois*, 439 U.S. 128, 131, n.1 (1978). Beasley argues (1) that the search warrant was defective because Officer Taylor's affidavit did not establish probable cause to search the house or the defendant's truck or shed; (2) that the warrant and affidavit did not describe the items to be searched for and seized; and (3) that the search was unreasonable because it was conducted pursuant to stale search warrant. In opposition, the government argues (1) that Officer Taylor's affidavit established probable cause; (2) that the good faith exception applies even if the court finds the search warrant defective; and (3) that the search warrant was not stale when it was executed.

A.  Whether the Affidavit Established Probable Cause

The first issue that the court must decide is whether the affidavit on which the search warrant was based provided probable cause for the issuance of the warrant. To establish probable cause, the affidavit should set out adequate supporting facts and circumstances to indicate "a 'fair probability' that evidence of a crime will be located on the premises of the proposed search." *United States v. Bowling*, 900 F.2d 926, 930 (6th Cir. 1990)(quoting

*United States v. Algie*, 621 F.3d 1039, 1041 (6th Cir. 1983)). An issuing judge's determination of probable cause should be made in a "realistic and common sense fashion" and reviewed in the same manner. *Algie*, 721 F.2d at 1041. Moreover, that determination should be afforded great deference. *Id.*

Beasley argues that probable cause was lacking because the affidavit presented to the issuing judge was a "bare bones" affidavit. An affidavit is considered "bare bones" when it merely states suspicions, beliefs, or conclusions "without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996). Beasley argues that the affidavit is "bare bones" because it fails to adequately describe the confidential sources's reliability or set out particularized facts demonstrating that any quantity of cocaine was kept on the premises for unlawful possession, sale, or transportation.[5] Beasly asserts that the

---

5. Beasley also takes issue with the fact that Officer Taylor's affidavit asserts in a conclusory fashion that the substance handed over by the confidential informant tested positive for cocaine. Beasley argues that this statement is not enough to establish probable cause or that the substance was, in fact, crack cocaine because Officer Taylor's affidavit does not provide sufficient detail describing the method used to test the crack cocaine. At the hearing, the court noted that magistrates are entitled to rely upon the sworn statements made by an affiant in a warrant affidavit and that this line of argument essentially raises a *Franks* issue of whether the affidavit in support of the warrant included deliberate falsehoods or misinformation with a reckless disregard for the truth. *See Franks v. Delaware*, 438 U.S. 154, 155–56, 171–72 (1978)("There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof."). This issue was not specifically raised in Beasley's multiple, amended motions to suppress. Regardless, Beasley did not make the requisite and "substantial preliminary showing" that a false statement or material omission was intentionally or recklessly made by Officer Taylor in

7

affidavit only establishes, if anything, a single-shot drug transaction with a confidential informant.  As separate issues, Beasley also argues that even if there was probable cause to search the residence, the warrant contained insufficient probable cause to permit the officers to search the shed and vehicle and that the warrant "does not make any mention of the items to be seized." (D.E. 50, at 2–3.)  Having reviewed the affidavit, the court finds that it sets forth facts and circumstances to provide a sufficient basis for the state court judge to find, based upon the totality of the circumstances, that there was probable cause for the search.

Officer Taylor's affidavit states that he received a tip from a confidential source that the defendant was selling drugs from his home.  Two factors are often considered critical in determining whether an informant's tip provides probable cause to support the issuance of a warrant: (1) an explicit and detailed first-hand description of the wrongdoing; and (2) corroboration of the tip by independent investigation.  *United States v. Jones*, 159 F.3d 969, 974 (6th Cir. 1998).  Both are present here.  Although Officer Taylor's affidavit does not provide a detailed account from the confidential informant, the informant's information was first-hand and was also corroborated by independent investigation because the confidential informant participated in the controlled buy.

---

the warrant affidavit.  *See id*. at 155–56; *Mays v. City of Dayton*, 134 F.3d 808, 815 (6th Cir. 1998)(applying *Franks* to omissions).  Therefore, the court did not permit any argument or questioning on this issue.  Nor did the court provide Beasley additional time to submit a brief on the issue.  The court noted that Beasley may take this issue up with the presiding district court judge.

8

According to the affidavit, the source wore an audio listening device while the source exchanged controlled currency with the defendant for 9 grams of a substance at the defendant's home. The affidavit further states that the officers obtained the substance from the confidential source and conducted a test which proved the substance to be crack cocaine. This corroboration establishes the confidential source's reliability and veracity. The affidavit also states that the officers, as well as the confidential source, reported a large amount of "to and from" traffic from the residence. According to Officer Taylor in his affidavit, these facts and circumstances, in conjunction with his extensive drug enforcement training and experience, led him to believe that there was probable cause to support a search. The court agrees. There was a substantial basis to issue the warrant.

The facts and circumstances laid out in the affidavit — the confidential tip, which was corroborated by the controlled buy, and the heavy "to and from" traffic at the defendant's house — collectively raise a fair probability that evidence of drug dealing would be found at the defendant's residence. Moreover, the "to and from" traffic also raises a fair probability that more than just the single-shot deal described in the affidavit was occurring at Beasley's premises. Although the affidavit does not go into great detail, affidavits are often drafted "by nonlawyers in the midst and haste of a criminal investigation" and should not be

9

interpreted in a hypertechnical manner. *United States v. Pelham*, 801 F.2d 875, 878 (6th Cir. 1986)(quotation omitted).

Additionally, the court finds that the affidavit provided probable cause for the officers to search the shed and all vehicles on the property. A warrant for the search of a specified residence or premises authorizes the search of auxiliary and outbuildings within the curtilage. *United States v. Bennett*, 170 F.3d 632, 505 (6th Cir. 1999)(noting that, although an affidavit did not swear to any illegal activity in a shop building near a residence, the shop building and residence were, for all practical purposes, one single location because the outbuilding was within the curtilage of the "premises" for which the search warrant was issued). The Supreme Court has identified four factors that courts should consider when determining whether a structure falls within the curtilage of the home: (1) the proximity of the area claimed to be curtilage; (2) whether the area is included within an enclosure surrounding the home; (3) the nature or the uses to which the area is put; and (4) the steps taken by the resident to protect the area from observation. *United States v. Dunn*, 480 U.S. 294, 300-01 (1987).

Officer Taylor testified that the shed was located approximately twenty yards from Beasley's residence and was not locked or set off by any boundaries or fencing. Beasley's truck was sitting in the driveway, which was directly adjacent to Beasley's residence. The photographs introduced into evidence

10

corroborated his testimony. Accordingly, the court finds that the truck and shed are within the curtilage of the home and thus were a part of the residence and properly included in the search warrant. *See Bennett*, 170 F.3d at 638 (finding that a shop building that was 60 to 100 feet away from the residence was within the curtilage and part of the residence).

Beasley also argues that the warrant was deficient because it does not mention the items to be seized with particularity. This argument fails. Both Officer Taylor's affidavit and the search warrant list the following to be searched for and seized: (1) "Crack Cocaine and any and all paraphernalia related to storage, packaging, sale, distribution and manufacturing of Crack Cocaine"; (2) "Records, computers and computers and computer storage disk[s]" that might contain evidence of drug sales; (3) residency documentation; (4) financial records pertaining to drug proceeds and any items purchased with those proceeds; and (5) any firearms. (Search Warrant, Ex. 1; Officer Taylor's Aff., Ex. 1.) Indeed, the search warrant and the affidavit in support of the warrant sufficiently describe the items to be searched for and seized.

B. <u>Staleness of the Warrant</u>

Beasley also contends that warrant became stale because the officers executed the warrant seventy-two hours after it was issued. This argument also fails. The question of staleness depends on the "inherent nature of the crime." *United States v.*

11

*Spikes*, 158 F.3d 913, 923 (6th Cir. 1998). Staleness is not measured by counting days on the calendar. *Id.* Courts consider several variables: the character of the crime; the criminal; the thing to be seized; the place to be searched; etc. *Id.* Here, the informant purchased crack cocaine from Beasley at his residence. Providing that the informant and the officers also observed heavy "to and from" traffic from Beasley's residence, it was reasonable to assume that this was Beasley's base of operations for his crack-dealing enterprise. Thus, the seventy-two hour delay in executing the warrant was reasonable. *See United States v. Moore*, 661 F.3d 309, 313 (6th Cir. 2011)(noting that a period of less than five days between the CI's information about the presence of drugs and the application for and the execution of the warrant does not make the information stale); *United States v. Williams*, 224 F.3d 530 (6th Cir. 2001)(upholding the validity of a warrant based on an affidavit that stated the defendant was seen by a CI in possession of crack at the residence to be searched in the past seventy-two hours); *United States v. Allen*, 211 F.3d 970 (6th Cir. 2000)(en banc)(upholding a warrant based on an affidavit that stated the defendant was seen by a CI in possession of cocaine at the residence to be searched in the past seventy-two hours); *United States v. Finch*, 998 F.2d 349 (6th Cir. 1993)(upholding a warrant whose affidavit stated that the CI had been in the residence in the last five days and had seen the defendant storing and selling

cocaine). As noted by the government, the issuance of this warrant was also in compliance with Tennessee law because it was executed and returned within five days. *See* TENN. CODE ANN. § 40-6-107 ("A search warrant shall be executed and returned to the magistrate by whom it was issued within five (5) days after its date, after which time, unless executed, it is void.") Accordingly, the court finds that the warrant was not stale when executed.

C. Good-Faith Exception

Even if the court were to find that the affidavit failed to establish probable cause for the issuance of the warrant, the evidence and items seized would be admissible pursuant to the good-faith exception set forth in *United States v. Leon*, 468 U.S. 897 (1984). Under *Leon,* the Fourth Amendment exclusionary rule does not apply to suppress evidence obtained by officers acting in reasonable reliance on a search warrant issued by a neutral and detached magistrate that is later deemed invalid. *Id.* at 922. Suppression is still appropriate, however, if (1) the magistrate was misled by information in the affidavit that the affiant knew to be false or would have known to be false except for the affiant's reckless disregard for the truth; (2) the magistrate is not neutral or detached; (3) the affidavit is so devoid of facts suggesting probable cause making any belief that probable cause exists completely unreasonable; or (4) the warrant is so facially deficient that officers cannot reasonably presume it to be valid.

*Id.* at 923; *United States v. Czuprynski*, 46 F.3d 560, 563–64 (6th Cir. 1995).

At the hearing, Beasley conceded that he did not have evidence to support any argument that the magistrate was misled by false information in the affidavit, that the magistrate was biased, or that the warrant was facially deficient. Beasley's sole contention is that the affidavit was so devoid of facts to make any belief that probable cause existed completely unreasonable. The court disagrees. The affidavit was not so devoid of facts to make reliance on it completely unreasonable. The affidavit lays out a confidential tip, which was corroborated by a controlled buy of crack cocaine — *in which the confidential informant actually participated* — and describes heavy "to and from" traffic from Beasley's residence — activity on his premises that is consistent with the sale of drugs. Thus, *Leon*'s good-faith exception would apply to prevent the suppression of evidence seized at Beasley's residence.

### III. RECOMMENDATION

For the reasons expressed above, it is recommended that Beasley's motion to suppress be denied.

Respectfully submitted this 16th day of March, 2012.

        s/Diane K. Vescovo
        DIANE K. VESCOVO
        UNITED STATES MAGISTRATE JUDGE